**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Denise Germaine Dubord

   v.                                  Civil No. 16-cv-026-LM
                                              Opinion No. 2016 DNH 201
Carolyn W. Colvin, Acting
Commissioner, Social
Security Administration


**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Denise Dubord moves to
reverse the Acting Commissioner's decision to deny her
applications for Social Security disability insurance benefits,
or DIB, under Title II of the Social Security Act, 42 U.S.C. §
423, and for supplemental security income, or SSI, under Title
XVI, 42 U.S.C. § 1382.  The Acting Commissioner, in turn, moves
for an order affirming her decision.  For the reasons that
follow, this matter is remanded to the Acting Commissioner for
further proceedings consistent with this order.

**I. Standard of Review**

The applicable standard of review in this case provides, in
pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of

the Commissioner of Social Security as to any fact, if
supported by substantial evidence, shall be conclusive
. . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB
decisions); see also 42 U.S.C. § 1383(c)(3) (establishing
§ 405(g) as the standard of review for SSI decisions).  However,
the court "must uphold a denial of social security . . .
benefits unless 'the [Acting Commissioner] has committed a legal
or factual error in evaluating a particular claim.'" Manso-
Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per
curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting
Commissioner's findings of fact be supported by substantial
evidence, "[t]he substantial evidence test applies not only to
findings of basic evidentiary facts, but also to inferences and
conclusions drawn from such facts." Alexandrou v. Sullivan, 764
F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner,
360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial
evidence is 'more than [a] mere scintilla.  It means such
relevant evidence as a reasonable mind might accept as adequate
to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d
594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402
U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the
[Acting Commissioner] to determine issues of credibility and to

draw inferences from the record evidence.  Indeed, the
resolution of conflicts in the evidence is for the [Acting
Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS,
955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations
omitted).  Moreover, the court "must uphold the [Acting
Commissioner's] conclusion, even if the record arguably could
justify a different conclusion, so long as it is supported by
substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529,
535 (1st Cir. 1988) (per curiam).  Finally, when determining
whether a decision of the Acting Commissioner is supported by
substantial evidence, the court must "review[] the evidence in
the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting
Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material
Facts.  That statement, document no. 10, is part of the court's
record and will be summarized here, rather than repeated in
full.

Dubord has worked as a cashier and as a program aide in a
youth placement home.  She last earned reported income from such
work in September of 2012.  She applied for DIB in December of
2013, and applied for SSI in February of 2014.

3

Dubord has been diagnosed with a variety of physical and mental conditions, including pigmented villonodular synovitis ("PVNS"),[1] carpal tunnel syndrome,[2] fibromyalgia,[3] lumbar radiculopathy,[4] and depression.  She underwent surgery for her PVNS in May of 2013.

In June of 2014, Dubord's physical residual functional capacity ("RFC")[5] was assessed by Dr. Lewis Rosenthall, a state-agency consultant who reviewed her medical records.  With regard to exertional limitations, Dr. Rosenthall opined that Dubord

---

[1] Pigmented villonodular synovitis is defined as "diffuse outgrowths of synovial membrane of a joint . . . composed of synovial villi and fibrous nodules infiltrated by hemosiderin- and lipid-containing microphages and multinucleated giant cells; the condition may be inflammatory." Stedman's Medical Dictionary 1920 (28th ed. 2006).

[2] Carpal tunnel syndrome is "the most common nerve entrapment [syndrome], characterized by paresthesias, typically nocturnal, and sometimes sensory loss and wasting in the median nerve distribution to the hand . . . due to chronic entrapment of the median nerve at the wrist within the carpal tunnel." Stedman's, supra note 1, at 1892.  Paresthesia is "[a] spontaneous abnormal usually nonpainful sensation (e.g., burning, pricking)." Id. at 1425.

[3] Fibromyalgia is "[a] common syndrome of widespread soft-tissue pain accompanied by weakness, fatigue, and sleep disturbance." Stedman's, supra note 1, at 725.

[4] Radiculopathy is a "[d]isorder of the spinal nerve roots." Stedman's, supra note 1, at 1622.

[5] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1).

could lift and/or carry 20 pounds occasionally and 10 pounds
frequently, could push and/or pull the same amount with the same
frequency, could stand and/or walk (with normal breaks) for a
total of four hours, and could sit (with normal breaks) for
about six hours in an eight-hour workday.  He further opined
that: (1) "[a] medically required hand-held assistive device is
necessary for ambulation," Administrative Transcript
(hereinafter "Tr.") 55, 67; and (2) Dubord "must periodically
alternate [between] sitting and standing to relieve pain and
discomfort," id.  He explained those exertional limitations this
way:

> Claimant [status post] resection pigmented
> villoglandular synovitis (PVGS) L[ef]t ankle (Hecht
> 5/13) complicated by calf [deep vein thrombosis];
> [work up] revealed Prothrombin Gene Mutation (Peterson
> 1/14); BMI is 39.5; at Ortho [follow up] (Peterson
> 1/14) gait remained antalgic with use of cane & brace
> [consistent with] self-stated [activities of daily
> living] of 2/9/14.  Overall, stand/walk time should be
> limited to 4 h[ou]rs, both cane & L[ef]t ankle brace
> should be available to claimant throughout the
> workday, & she should be allowed to change posture
> every two h[ou]rs for 5 min[utes] to assist venus
> return.[6]

Id.  Beyond that, in a discussion of Dubord's activities of daily
living, Dr. Rosenthall noted: "[C]an walk 3 feet with a cane and

---

[6] An antalgic gait is "a characteristic [gait] resulting
from pain on weight-bearing in which the stance phase of [gait]
is shortened on the affected side."  Stedman's, supra note 1, at
781.

left ankle brace.  At face-to-face [field office] intake (Dilullo 1/15/14) clamant ambulated with a cane."  Tr. 56, 68. Finally, Dr. Rosenthall identified no manipulative limitations, i.e., limitations in reaching, handling, fingering, or feeling.

On December 15, 2014, a family practitioner who had treated Dubord, Dr. Peter Doane, wrote a letter, to whom it may concern, that states, in pertinent part:

> [Dubord] has not been able to work since September 2012 due to left ankle pain and [was] subsequently diagnosed with Pigmented Villonodular Synovitis.  For this she had surgery in 2013 and was complicated by being a more extensive surgery and injury to her peroneal nerve and postoperative deep venous thrombophlebitis.  She has had ongoing severe pain in the left ankle even after surgery.  Her surgeon has repeated an MRI and ongoing swelling and inflammation but not good explanation of her outcome with chronic pain and swelling.  He offered her no further treatment options.  She has severe pain and worse with weight bearing.  She has to walk with a cane.  In addition she has since then been diagnosed with a L5S1 Herniated Lumbar Disc, not needing surgery but ongoing left leg sciatic pain.  Also Fibromyalgia, Severe Depression, Anxiety, Carpal Tunnel Syndrome, and Vitamin D deficiency have now been diagnosed and partly treated.  See my detailed exam but due to these multiple medical problems she cannot sit over 30 minutes, walk over 100 feet or stand in place but for short intervals.  He[r] depression/anxiety limits her cognition as she has problems concentrating and focusing.  She has to take frequent rest periods during the day to lay down at least 2 hours a day.
>
> It is my opinion based on her history and exam [that] she is not currently able to work even a sedentary job with accommodations.

Tr. 490 (emphasis added).

In February of 2015, Dr. Doane completed a Medical Source
Statement of Ability to Do Work-Related Activities (Physical) on
Dubord.  On that form, he opined that Dubord: (1) could lift
and/or carry less than ten pounds occasionally; (2) could not
frequently lift and/or carry any amount; and (3) could sit for
less than six hours in an eight-hour workday.  In response to
the question about Dubord's capacity for standing and/or
walking, Doane checked the box for "less than 2 hours in an 8-
hour workday," but did not check the box for "medically required
hand-held assistive device is necessary for ambulation."  Tr.
491.  In support of his conclusions regarding Dubord's capacity
for standing and/or walking, Dr. Doane provided the following
narrative explanation:

> Hard lifting walking with cane and carrying
> [illegible] weight throws her balance off and risk of
> falling
>
> cannot stand more than 20-30 min[utes] at a time
> without a rest and needs to lay down 2-3 hours every
> afternoon due to pain
>
> cannot sit more than 45 min[utes] due to pain and left
> leg goes numb [and] then when [she] gets up [she is]
> unable to walk
>
> Repeti[t]ive use of arms [and] legs gets painful [and]
> weak

Tr. 492 (emphasis added).  Dr. Doane also opined that Dubord was
limited to only occasional reaching, handling, and fingering.
He explained: "Reaching - arms get painful [and] weak with

manipulation.  Fingers [and] hands [are] limited due to severe
pain from carpel tunnel."  Tr. 493.

After the SSA denied Dubord's applications for benefits,
she received a hearing before an Administrative Law Judge
("ALJ").  At the hearing, the following exchange took place
between Dubord and her attorney:

> Q    You're walking with a cane today; is that
> normal?
>
> A    Yes.
>
> Q    When did you start with the cane?
>
> A    I actually started walking with the cane a
> little before I had surgery and then it was definitely
> after I had surgery and I haven't been able to walk
> without it after surgery.  And I had surgery May 23rd,
> 2013.

Tr. 31.

Subsequently, the ALJ took testimony from a vocational
expert ("VE").  The VE, in turn, responded in the affirmative
when the ALJ asked him whether Dubord's past work could be
performed by

> someone of similar age, education and vocational
> background, who is limited to light work, however, the
> individual can only stand or walk for two hours out of
> the eight-hour workday, sit for six; should avoid all
> ladders, ropes and scaffolds.  Can occasionally climb
> stairs, that would be up to one-third; occasionally
> perform all of the postural maneuvers.  Should avoid
> even moderate exposure to temperature extremes.
> Should avoid all hazards.  Can frequently handle and
> grasp bilaterally.  That's two-thirds of the work day

8

or more and is able to work within a schedule at a
slower pace, but still within a reasonable pace.

Tr. 44.  The ALJ's hypothetical question to the VE did not

mention the use of a cane or other hand-held assistive device.

After the hearing, the ALJ issued a decision that includes

the following relevant findings of fact and conclusions of law:

> 3.  The claimant has the following severe impairments:
> pigmented villonodular synovitis of the left ankle,
> bilateral carpel tunnel syndrome, obesity, a
> coagulation disorder, fibromyalgia, degenerative disc
> disease, and depression (20 CFR 404.1520(c) and
> 416.920(c)).
>
> . . . .
>
> 4.  The claimant does not have an impairment or
> combination of impairments that meets or medically
> equals the severity of one of the listed impairments
> in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
> 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925
> and 416.926).
>
> . . . .
>
> 5.  After careful consideration of the entire record,
> I find that the claimant has the residual functional
> capacity to perform light work as defined in 20 CFR
> 404.1567(b) and 416.967(b) except she could stand or
> walk for two hours and sit for six hours in an eight-
> hour day; she must avoid all ladders, ropes, and
> scaffolds, but can occasionally climb ramps or stairs;
> she could occasionally balance, stoop, kneel, crouch,
> and crawl; she must avoid even moderate exposure to
> cold and hot temperatures, hazards, humidity, and
> vibrations; she is able to perform frequent bilateral
> handling and grasping, with frequent defined as up to
> two-thirds of the workday; and she is able to work
> within a schedule, but at a slower but not
> unreasonably slow pace.
>
> . . . .

> 6. The claimant capable of performing past relevant
> work as a cashier II and group work program aide.
> This work does not require the performance of work-
> related activities precluded by the claimant's
> residual functional capacity (20 CFR 404.1565 and
> 416.965).

Tr. 13, 15, 24.

### III. Discussion

#### A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets. 42 U.S.C. § 1382(a). The question in this case is whether Dubord was under a disability from September 7, 2012, through September 16, 2015, which is the date of the ALJ's decision.

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process. See 20 C.F.R. §§ 404.1520 (DIB) and 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe

10

impairment or combination of impairments, the
application is denied; 3) if the impairment meets the
conditions for one of the "listed" impairments in the
Social Security regulations, then the application is
granted; 4) if the [claimant's] "residual functional
capacity" is such that he or she can still perform
past relevant work, then the application is denied; 5)
if the [claimant], given his or her residual
functional capacity, education, work experience, and
age, is unable to do any other work, the application
is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920).

The claimant bears the burden of proving that she is

disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  She

must do so by a preponderance of the evidence.  See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).  Finally,

[i]n assessing a disability claim, the [Acting
Commissioner] considers objective and subjective
factors, including: (1) objective medical facts; (2)
[claimant]'s subjective claims of pain and disability
as supported by the testimony of the [claimant] or
other witness; and (3) the [claimant]'s educational
background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797

F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690

F.2d 5, 6 (1st Cir. 1982)).

B. Dubord's Claims

Dubord claims that the ALJ made several errors in assessing

her RFC and made several additional errors by determining, at

Step 4, that she was capable of performing her past work.
Dubord's first claim is persuasive and dispositive.

### 1. RFC

Dubord claims that the ALJ erred in assessing her RFC by:
(1) failing to include a limitation based on her need to use an
assistive device for walking; (2) failing to include a sit/stand
option; and (3) determining that she had the RFC to perform
"frequent bilateral handling and grasping," Tr. 15.[7]

### a. Dubord's Need for an Assistive Device

According to Dubord, the ALJ erred by ignoring Dr.
Rosenthall's opinion that she needs a cane to get around.  The
Acting Commissioner disagrees, arguing that: (1) notwithstanding
Dr. Rosenthall's opinion, the medical evidence demonstrates that
Dubord can ambulate effectively without a cane; (2) Dubord's
treating physician, Dr. Doane, did not opine that Dubord needed
to use a cane in the Medical Source Statement he filled out; and
(3) "[t]he ALJ . . . found that Dr. Rosenthall's cane finding

---

[7] Dubord also criticizes the ALJ for rejecting Dr. Doane's
opinion in favor of Dr. Rosenthall's, which resulted in findings
that she could occasionally climb ramps, stoop, and crawl rather
than being entirely precluded from performing those postural
activities.  But given the other grounds for remand discussed
below, there is no need to address either the ALJ's explanation
for discounting Dr. Doane's opinion or the evidentiary support
for the ALJ's findings on Dubord's abilities to climb ramps,
stoop, and crawl.

conflicted with treatment notes and [Dubord's] return to childcare work . . . [and] [t]hus, the ALJ properly resolved a conflict in the record and did not ignore any evidence in doing so," doc. no. 9-1, at 10.  The real issue here is the lack of substantial evidence to support the lack of an assistive-device limitation in Dubord's RFC.

Plainly, Dr. Rosenthall opined that Dubord needed a hand-held assistive device for ambulation.  See Tr. 55, 67.  The ALJ, in turn, "afford[ed] Dr. Rosenthall's opinion great weight," Tr. 21, but did not include an assistive-device limitation in Dubord's RFC.  To be sure, ALJs are permitted, if not encouraged, "to address separately each medical opinion from a single source."  Social Security Ruling 96-2p, 1996 WL 374188, at *2 (S.S.A. July 2, 1996).  Thus, the ALJ was free to accept some of Dr. Rosenthall's opinions and reject others.  But apart from the lack of an assistive-device limitation in Dubord's RFC, there is no indication that the ALJ actually considered Dr. Rosenthall's assistive-device opinion at all, much less that he consciously chose to discount or reject it; the ALJ said nothing at all in his decision about that part of Dr. Rosenthall's opinion.  At least in the absence of a contrary opinion from another medical source, it would appear that the ALJ's unqualified acceptance of Dr. Rosenthall's opinion obligated him

13

to include an assistive-device limitation in Dubord's RFC.  See Payne v. Colvin, No. 15-cv-274-JD, slip op. at *14-17 (D.N.H. May 20, 2016), R & R adopted in part by 2016 WL 3351004 (June 15, 2016) (determining that RFC assessment was not supported by substantial evidence when ALJ's RFC did not include limitations from uncontroverted opinion to which ALJ gave great weight).

The record includes no other medical opinion that provides substantial evidence for the lack of an assistive-device limitation in Dubord's RFC.  The Acting Commissioner correctly notes that when Dr. Doane filled out his Medical Source Statement, he did not check the box indicating that a medically required hand-held device was necessary for Dubord to ambulate.[8] But Dr. Doane mentioned Dubord's use of a cane on the very next page of his statement, and he did not say that her use of a cane was unnecessary.  Furthermore, the letter he wrote two months before he filled out his Medical Source Statement says this: "She has to walk with a cane."  Tr. 490.  So, Dr. Doane's failure to check a box on his Medical Source Statement cannot reasonably be construed as stating an opinion that Dubord could ambulate effectively without an assistive device.  Thus, the opinions before the ALJ provide hardly any evidence, much less

---

[8] Given that the ALJ gave "little weight" to Dr. Doane's opinions, the Acting Commissioner's reliance upon them is somewhat puzzling.

14

substantial evidence, for an RFC that does not include a
limitation pertaining to the use of a hand-held assistive device
for ambulation.

Having disposed of the Acting Commissioner's argument that
Dr. Doane did not opine that Dubord needed an assistive device,
the court turns, briefly, to the Acting Commissioner's two
remaining arguments in support of the ALJ's failure to include
an assistive-device limitation in Dubord's RFC.

First, the Acting Commissioner cites two physical therapy
notes from the summer of 2013 for the proposition that "medical
evidence demonstrated that [Dubord] was able to ambulate
effectively without the use of a cane."  Doc. no. 9-1, at 10.
There are at least two problems with that argument.  For one
thing, the ALJ provided no such explanation in his decision, and
it is not for the Acting Commissioner, or the court, to fashion
rationales for the ALJ that the ALJ did not articulate.  See
Letellier v. Comm'r of SSA, No. 13-cv-271-PB, 2014 WL 936437, at
*8 (D.N.H. Mar. 11, 2014) (collecting cases); see also Haggblad
v. Astrue, No. 11-cv-028-JL, 2011 WL 6056889, at *13 (D.N.H.
Nov. 17, 2011), R & R adopted by 2011 WL 6057750 (Dec. 6, 2011)
(citing High v. Astrue, No. 10-cv-69-JD, 2011 WL 941572, at *6
(D.N.H. Mar. 17, 2011); Dube v. Astrue, 781 F. Supp. 2d 27, 36
n.15 (D.N.H. 2011); Laplume v. Astrue, No. 08-cv-476-PB, 2009 WL

2242680, at *6 n.20 (D.N.H. July 24, 2009) ("I cannot uphold the ALJ's decision based on rationales unarticulated in the record.")).  Moreover, while the ALJ did not cite medical evidence to reject an assistive-device limitation, he did turn to medical evidence to discount Dubord's statements about her symptoms, and in so doing, he cited four medical notes from 2014 and 2015 describing Dubord as limping and using a cane.[9]  So, if anything, the medical evidence the ALJ cited does not support, but calls into question, the lack of an assistive-device limitation in Dubord's RFC.

The Acting Commissioner's final argument, that "[t]he ALJ . . . found that Dr. Rosenthall's cane finding conflicted with the treatment notes and [Dubord's] return to childcare work," doc. no. 9-1, at 10, fails because it just not accurate.  The page of the decision that the Acting Commissioner cites for that proposition mentions Dubord's "reported need to walk with a cane and brace," Tr. 17, but says nothing else about Dubord's use of a cane and does not mention Dr. Rosenthall's opinion at all. Moreover, in the paragraph he devoted to explaining why he gave Dr. Rosenthall's opinion great weight, the ALJ said nothing at

---

[9] In addition, in a Consultation Report from September of 2014, Dr. Christopher Martino noted that Dubord had experienced pain and numbness in her left foot ever since her surgery more than a year earlier, and that "[s]he does walk with a cane." Tr. 566.

all about Dr. Rosenthall's opinion that Dubord needed a cane to ambulate.  In short, the Acting Commissioner sketches a rationale the ALJ might have articulated but did not, and the ALJ's decision may not be affirmed on the basis of a rationale on which he did not rely.  See Letellier, 2014 WL 936437, at *8.

To sum up, the ALJ's decision not to include a limitation in Dubord's RFC reflecting her need to use a cane to ambulate, a limitation endorsed by Drs. Rosenthall and Doane, is not supported by substantial evidence.  Because the ALJ's Step 4 determination rests upon VE testimony that was offered in response to his unsupported RFC assessment, the Step 4 determination is also unsupported by substantial evidence.  See Arocho v. Sec'y of HHS, 670 F.2d 374, 375 (1st Cir. 1982) ("in order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities"); see also Marshall v. Colvin, No. 14-cv-239-PB, 2015 WL 248615, at *4 (D.N.H. Jan. 20, 2015) (ruling that where ALJ erred by omitting limitation from RFC presented to VE, ALJ's Step 5 determination was not supported by substantial evidence).  The lack of support for the ALJ's Step 4 determination, in turn, requires a remand.  See id.

### b. Dubord's Need for a Sit/Stand Option

Dubord also claims that the ALJ erred by failing to include a sit/stand option in her RFC.  The Acting Commissioner justifies that omission by: (1) noting that while Dr. Rosenthall opined that Dubord required a sit/stand option, Dr. Doane did not; and (2) arguing that the ALJ was free to resolve the conflict between those two opinions.  Again, Dubord has the better argument.

It is up to the ALJ to resolve conflicts in the evidence. See Irlanda Ortiz, 955 F.2d at 769.  In light of the ALJ's responsibility to resolve such conflicts, the Acting Commissioner cites Briand v. Colvin, No. 14-cv-425-LM, 2015 WL 3970303 (D.N.H. June 30, 2015), for the proposition "that an RFC finding is supported by substantial evidence where the ALJ resolves a conflict between any differing opinions requiring a sit/stand option."  Doc. no. 9-1, at 11.

There are several problems with the Acting Commissioner's reliance on Briand.  To begin, she credits the ALJ with resolving a conflict between Dr. Rosenthall's opinion that Dubord required a sit/stand option and Dr. Doane's opinion that she did not.  However, the conflict the ALJ actually identified in his decision was a conflict between Dr. Doane's highly restrictive limitations and Dr. Rosenthall's less restrictive

18

limitations, which he resolved in favor of Dr. Rosenthall's opinion, to which he gave great weight.  Nowhere in his decision did the ALJ reject Dr. Rosenthall's sit/stand option in favor of a less restrictive limitation in Dr. Doane's opinion.  That makes this case similar to Briand, where "the ALJ did not say anything about [the state-agency medical consultant's] opinion on [the claimant's] need for a sit/stand [option]," 2015 WL 3970303, at *5, and the matter was remanded for a proper consideration of that opinion, see id.  The same result is warranted here.

That said, there is a good explanation for the ALJ's failure to expressly reject Dr. Rosenthall's sit/stand option in favor of a less restrictive sit/stand limitation from Dr. Doane: Dr. Doane's opinion did not include a sit/stand limitation that was less restrictive than the one in Dr. Rosenthall's opinion. The Acting Commissioner makes much of the fact that Dr. Doane did not check the box on his Medical Source Statement form indicating that Dubord "must periodically alternate sitting and standing to relieve pain and discomfort."  Tr. 492.  But it is not reasonable to read that form as endorsing a limitation that is less restrictive than the sit/stand option in Dr. Rosenthall's RFC assessment.

On the same form where he did not check the box, Dr. Doane wrote that Dubord "cannot stand more than 20-30 min[utes] at a time without a rest" and "cannot sit more than 45 min[utes] due to pain."  Tr. 492.  Those limitations are more restrictive, not less restrictive, than those reflected in Dr. Rosenthall's opinion that Dubord "should be allowed to change posture every two h[ou]rs for 5 min[utes]."  Tr. 55, 67.  Thus, as a purely factual matter, the ALJ did not resolve a conflict between a less restrictive limitation in Dr. Doane's opinion and a more restrictive limitation in Dr. Rosenthall's opinion.

In sum, the ALJ's decision not to include a sit/stand option in Dubord's RFC is not supported by substantial evidence, which means that the ALJ's Step 4 determination is not supported by substantial evidence.  See Marshall, 2015 WL 248615, at *4.  That error, like the omission of an assistive-device limitation, merits a remand.

### c. Frequent Bilateral Handling & Grasping

Finally, moving from limitations that the ALJ excluded from Dubord's RFC to one that he did include, Dubord claims that the ALJ erred by finding that she had the capacity "to perform frequent bilateral handling and grasping."  Tr. 15.  Her argument goes like this: (1) Dr. Rosenthall gave her an RFC that included no manipulative limitations, but did so before she was

diagnosed with carpel tunnel syndrome and fibromyalgia; (2)
after she received those diagnoses, Dr. Doane gave her an RFC
that limited her to occasional reaching, handling, and
fingering, and Dr. Doane's is the only medical opinion based
upon a complete medical record; and (3) because there is no
medical opinion based upon the full medical record that includes
a capacity for frequent handling (or grasping), the ALJ's RFC is
necessarily based upon his own interpretation of raw medical
data, which is impermissible.  The Acting Commissioner
disagrees, arguing that the ALJ permissibly based his handling
and grasping limitation on the objective medical evidence.
While it is, perhaps, a close call, the court agrees with
Dubord.

It is well settled that "since bare medical findings are
unintelligible to a lay person in terms of residual functional
capacity, the ALJ is not qualified to assess residual functional
capacity based on a bare medical record." Gordils v. Sec'y of
HHS, 921 F.2d 327, 329 (1st Cir. 1990) (per curiam) (citations
omitted).  Thus, "an expert's RFC evaluation is ordinarily
essential unless the extent of functional loss, and its effect
on job performance, would be apparent even to a lay person."
Santiago v. Sec'y of HHS, 944 F.2d 1, 7 (1st Cir. 1991) (per

curiam); see also Manso-Pizarro, 76 F.3d at 17 (citing Perez v.
Sec'y of HHS, 958 F.2d 445, 446 (1st Cir. 1991)).

The Acting Commissioner relies upon the Santiago exception
to the rule stated in Gordils, and argues that the ALJ
permissibly based his handling and fingering limitation on an
office procedure note authored by Dr. Martino, a neurologist who
saw Dubord in October of 2014. The ALJ plainly used Dr.
Martino's note to discount the credibility of Dubord's
statements about "great limits with the use of her hands," Tr.
18, and to discount, as inadequately supported, Dr. Doane's
opinion that Dubord was limited to occasional handling and
fingering, see Tr. 22. It is a bit less clear, however, that
the ALJ affirmatively based his RFC assessment on Dr. Martino's
note; there is no statement to that effect in the ALJ's
decision. However, on this point, the court will give the
Acting Commissioner the benefit of the doubt. Still, the court
cannot agree that the ALJ's reliance upon Dr. Martino's note was
permissible under Santiago.

On October 18, 2014, Dubord saw Dr. Martino for an
EMG/Nerve Conduction Study, which was ordered on account of her
bilateral carpal tunnel symptomatology. Dr. Martino reported
the following results:

> Examination: Normal vascular integrity and motor
> function. No distinct sensory loss.

22

> Nerve conduction studies: The conduction studies of
> bilateral median and ulnar motor nerves are normal.
> The conduction studies of the right ulnar nerve
> sensory function is normal.
> The conduction of the left ulnar sensory potential
> shows very mild conduction velocity slowing.
> The conduction of bilateral median nerve sensory
> function show mild conduction slowing most profound
> across the transverse carpal ligament.
>
> Impression: The electrical studies are consistent with
> the clinical suspicion of carpal tunnel syndrome.  The
> values are only slightly below normal.

Tr. 562.  About two months after he performed the conduction

study described above, Dr. Martino gave Dubord a prescription

for a carpal tunnel splint.  The phone note documenting that

prescription also mentioned Dubord's report that the pain in her

hands had increased since her October appointment with Dr.

Martino.

The circumstances of this case do not bring it within the

Santiago exception.  The relationship between the results of Dr.

Martino's conduction studies and Dubord's capacity for handling

and grasping is not apparent to a lay person.  Indeed, the court

is not confident that a lay person would even know what a

conduction study is, much less know what the results of such a

study might mean or how to translate those results into a

functional capacity.  Beyond that, the medical evidence in this

case is not as benign as the evidence the ALJ permissibly

interpreted in Gordils, 921 F.2d at 328.[10]  Moreover, neither of
the two cases on which the Acting Commissioner relies supports a
ruling that it was permissible for the ALJ in this case to base
an RFC finding on Dr. Martino's office note.  In Haskell v.
Colvin, No. 13-cv-482-JL, 2015 WL 4196663, at *2 (D.N.H. Feb. 2,
2015), Judge Laplante ruled that the ALJ permissibly rendered a
commonsense judgment about functional capacity based upon
medical records showing that the claimant had made a small
number of minor complaints to his doctor about physical
limitations.  In Bergeron v. Astrue, No. 11-cv-395-PB, 2012 WL
2061700, at *2, *8 (D.N.H. June 7, 2012), Judge Barbadoro ruled
that the ALJ's consideration of medical evidence showing steady
progress toward recovery "did not amount to interpretation of
raw data from the medical record."  Because neither Haskell nor

---

[10] In that case, a consulting neurologist examined the
claimant, and reported these findings:

1) No consistent neurological deficit.

2) No clear, objective evidences, at present, to
   substantiate the diagnosis of an old protracted or
   new active lumbro-sacral Root Syndrome.

3) Likely, patient has a "weaker back," in general
   terms.

4) Patient tries to confuse the examiner.

921 F.2d at 329.  In contrast with the situation in Gordils, the
nerve conduction studies in this case did substantiate the
diagnosis of carpal tunnel syndrome.

Bergeron involved anything nearly so technical as interpreting
the functional ramifications of a nerve conduction study,
neither of those opinions provides support for the Acting
Commissioner's argument that it was permissible for the ALJ in
this case to base his assessment of Dubord's RFC on his own
interpretation of the results of Dr. Martino's nerve conduction
study.

The bottom line is this.  If the ALJ based his assessment
of Dubord's capacity for handling and grasping on Dr. Martino's
office note, he erred by interpreting raw medical data.  See
Gordils, 921 F.2d at 329; Santiago, 944 F.2d at 7.  If the ALJ
did not rely upon Dr. Martino's note, then his assessment is not
based upon any medical evidence at all, much less substantial
evidence.  Either way, the ALJ erred in his determination that
Dubord had the capacity for frequent handling and grasping,
which is a third reason to remand this matter.

### 2. Step 4

As the court has already explained, the ALJ's Step 4
determination is not supported by substantial evidence, which
requires a remand.  Because this case is being remanded for a
proper RFC assessment, the court declines to address Dubord's
arguments concerning the ALJ's credibility assessment, the

25

mechanics of his Step 4 determination, or the manner in which he limited Dubord's counsel's examination of the VE at her hearing.

## IV. Conclusion

For the reasons described above, the Acting Commissioner's motion for an order affirming her decision, document no. 9, is denied, and Dubord's motion to reverse that decision, document no. 7, is granted to the extent that the case is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge


November 1, 2016

cc:   Penelope E. Gronbeck, Esq.
      Terry L. Ollila, Esq.

26